## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>                 Plaintiff, <br><br> v. <br><br> JEFFREY ARSENAULT; OLD GREENWICH CAPITAL ADVISORS, LLC; and OGCP MANAGEMENT CO, LLC, <br><br>                 Defendants. | Civil Action No. <br><br> JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges the following against Defendants Jeffrey Arsenault; Old Greenwich Capital Advisors, LLC ("Old Greenwich Capital Advisors"); and OGCP Management Co, LLC ("OGCP Management") (collectively "Defendants"), and hereby demands a jury trial and seeks monetary and injunctive relief:

## SUMMARY OF THE ACTION

1.      After the fall of 2008, Jeffrey Arsenault and the investment fund he founded and managed, Old Greenwich Capital Partners, L.P. (the "OGCP Fund"), faced financial difficulties. The market downturn caused the OGCP Fund to lose value. Arsenault's partner split from the OGCP Fund and took with him a significant portion of the assets under management. Arsenault's house was soon in foreclosure.

2.      Thereafter, Arsenault and Old Greenwich Capital Advisors misappropriated money from the OGCP Fund, which Arsenault used to maintain his and his family's expensive lifestyle in Greenwich, Connecticut and to make unauthorized payments to Old Greenwich

Capital Advisors and to his other ventures.

3.      From 2014 to the present, Arsenault, through co-defendants Old Greenwich Capital Advisors and OGCP Management (the investment advisers he owned and controlled), diverted for Defendants' benefit millions of dollars of investor money he managed from two investment funds, the OGCP Fund and the OGCP Four Seasons Fund, LP (the "Four Seasons Fund," and together with the OGCP Fund, the "Funds").  Defendants drained the Funds of nearly all their assets.

4.      To conceal their theft from investors, Defendants fraudulently represented the value of the Funds' holdings in false account statements and tax documents, including by overstating the interest the OGCP Fund purportedly held in Defendants' Four Seasons Fund. Defendants tried, in part, to cover up the missing assets caused by their misappropriation by falsely claiming the missing money had been reinvested in the related Four Seasons Fund even after the Four Seasons Fund had ceased to operate.  Defendants knew that the OGCP Fund account statements and related tax documents were false and misleading because they knew they were diverting money away from the Funds and that the resulting Fund balances were inaccurate. Defendants also misled investors into believing losses were attributable to bad investments instead of their own misappropriation.

5.      Through their scheme, Defendants misappropriated more than $4.1 million from the Funds and, ultimately, investors, from October 2014 through the present.

6.      By engaging in the conduct described in the Complaint, Defendants have violated and continue to violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. § 340.10b-5(a) and (c)]; and Sections 206(1), (2) and (4) of the Investment Advisers Act of 1940 ("Advisers Act")

[15 U.S.C. § 80b-6] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

7.     Based on these violations, the Commission seeks:

a.   Entry of permanent injunctions enjoining Defendants from violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. § 340.10b-5(a) and (c)]; Sections 206(1), (2) and (4) of the Advisers Act and Rule 206(4)-8 thereunder by means of specified actions relevant to their violations;

b.   Entry of a conduct-based injunction enjoining Arsenault from directly or indirectly acting as or being associated with any broker, dealer, or investment adviser, except that such injunction would not prevent him from being a customer or client of a broker, dealer, or investment adviser.  For the purposes of this paragraph:

i.    a person is associated with a broker or dealer if such person is a partner, officer, director, or branch manager of such broker or dealer (or occupies a similar status or performs similar functions), directly or indirectly controls, is controlled by, or is under common control with such broker or dealer, or is an employee of such broker or dealer;

ii.   a person is associated with an investment adviser if such person is a partner, officer, or director of such investment adviser (or performs similar functions), or directly or indirectly controls or is controlled by such investment adviser, including any employee of such investment adviser;

c.   Appropriate civil monetary penalties against Defendants pursuant to Section

21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

d.   Disgorgement of Defendants' ill-gotten gains, pursuant to Sections 21(d)(3), (5), and (7) of the Exchange Act [15 U.S.C. § 78u(d)(3), (5), (7)], plus prejudgment interest;

e.   As to Arsenault, an officer and director bar pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and,

f.   any other relief that the Court deems just and proper.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over this action pursuant to Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), and 78aa] and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].

9.   Defendants, directly and indirectly, made use of the means or instrumentalities of interstate commerce, of the mails and wires, and/or of the means and instruments of transportation or communication in interstate commerce in connection with the transaction, acts, practices, and courses of business described in this Complaint.

10.   Venue lies in this Court pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. § 80b-14].  Certain of the acts, practices, and transactions and courses of business alleged in this Complaint occurred within the District of Connecticut.  Specifically, Old Greenwich Capital Advisors and OGCP Management had their principal place of business in Greenwich, Connecticut, Arsenault resided in Greenwich, Connecticut during the relevant period, and Arsenault communicated with one or more investors who lived in Connecticut about their investment in the Funds managed by the Defendants.

4

**DEFENDANTS**

11.     Jeffrey Arsenault, age 62, is a resident of Greenwich, Connecticut. Arsenault has been the principal owner and managing member of Old Greenwich Capital Advisors and OGCP Management since at least 2014.  During the entire relevant period and nearly continuously since September 1990, Arsenault has been associated with a registered broker-dealer.  Arsenault holds Series 7 and Series 63 licenses.  Arsenault is an investment adviser.

12.     Old Greenwich Capital Advisors, LLC is a Delaware limited liability company formed in 2004, with its principal place of business in Greenwich, Connecticut.  Old Greenwich Capital Advisors is an investment adviser and, since its inception, has been the investment adviser for the OGCP Fund.

13.     OGCP Management Co, LLC is a Delaware limited liability company formed in 2014, with its principal place of business in Greenwich, Connecticut.  OGCP Management is an investment adviser and, since its inception, has been the investment adviser for OGCP Four Seasons Fund, LP.

**RELATED ENTITIES**

14.     Old Greenwich Capital Partners, LP is a Delaware limited partnership with its principal place of business in Greenwich, Connecticut.  Formed in 2004, it has been managed and controlled by Old Greenwich Capital Advisors and its general partner, Old Capital Greenwich Partners, LLC, since inception.  Since at least 2005, the OGCP Fund has been offering investments in the form of limited partnership interests to investors.

15.     Old Greenwich Capital Partners, LLC ("OGCP LLC") is a Delaware limited liability company with its principal place of business in Greenwich, Connecticut.  Formed in 2004, OGCP LLC is the general partner to the OGCP Fund.

16.     OGCP Four Seasons Fund, LP (the "Four Seasons Fund") is a Delaware limited partnership with its principal place of business in Greenwich, Connecticut.  Formed in 2014, it was managed and controlled by OGCP Management and its general partner, OGCP Four Seasons GP, LLC, throughout its existence.  From at least 2014 through 2018, the Four Seasons Fund offered investments in the form of limited partnership interests to investors.

## STATEMENT OF FACTS

### A.  The OGCP Fund

17.     In 2004, Arsenault founded a new private investment fund.  He created three entities to form and manage the fund:  the OGCP Fund; Old Greenwich Capital Advisors; and Old Greenwich Capital Partners, LLC (collectively, the "OGCP Entities").

18.     Arsenault formed the OGCP Fund to be the investment fund, holding clients' investments.  Old Greenwich Capital Partners, LLC was the Fund's general partner, and Old Greenwich Capital Advisors was the Fund's management company.

19.     Arsenault operated the OGCP Entities under the brand "Old Greenwich Capital Partners" or "OGCP."

20.     Arsenault marketed the OGCP Fund as a "fund of funds," meaning it would aggregate investors' money to invest in a portfolio of other private funds.

21.     From at least 2008 through the present, the OGCP Fund's limited partnership agreement provided for an annual management fee of 1.5% of the limited partners' capital paid to Old Greenwich Capital Advisors.  The OGCP Fund's limited partnership agreement also provided that OGCP LLC was entitled to a performance fee of approximately 10% of the partnership's net profits.

22.     From at least 2014 through the present, OGCP LLC was also entitled to

reimbursement from the OGCP Fund for "expenses in connection with [the OGCP Fund's] operation, issuance of interests in [the OGCP Fund], and investment activities, or any other expense incurred with respect to [the OGCP Fund] activities," including, among others, investment expenses, legal expenses, accounting fees, and regulatory expenses such as filing fees.

23.     Arsenault initially operated the OGCP Entities from an office in New York, NY along with a business partner, who worked in Cleveland, Ohio.

24.     The OGCP Fund raised most of its principal between 2005 and 2008.

25.     During 2007-2008, the OGCP Entities reported in a Form ADV filed with the Commission that the OGCP Fund included approximately $26 million in assets, mostly from high-net-worth individuals, and that its fund invested primarily in hedge funds as a "fund of funds."

26.     Over time, the OGCP Fund invested in numerous private funds.  Some of the private funds would pay distributions or redemptions to investors periodically or allow withdrawals upon request subject to limitations.  Once an investment was made, the OGCP Fund typically held that investment in the private funds for multiple years.

**B.  OGCP's Reorganization and Arsenault's Financial Difficulties.**

27.     During the stock market crash in the fall of 2008, the OGCP Fund lost money because of the market decline.  Subsequent OGCP marketing materials stated that the OGCP Fund lost approximately 14% in October 2008 and approximately 30% for the year.

28.     Soon afterwards Arsenault split with his business partner.  Effective January 1, 2009, Arsenault and his business partner split the OGCP Fund into two separate funds.  The OGCP Fund continued but from the split until the present has been entirely under Arsenault's

control.  In the split, the OGCP Fund kept more than $10 million of the assets under

management.  Arsenault's former business partner eventually transferred the remaining assets

under management to a new fund he created.

29.     This professional split came on the heels of Arsenault's divorce.  In 2008,

Arsenault's then-wife filed for divorce.

30.     During this time, Arsenault failed to pay his state income taxes in full for both

2007 and 2008.  In 2010, the state of Connecticut placed a tax lien on his house in Greenwich,

Connecticut.  Separately, in January 2010, a mortgagee on the residence filed to foreclose.

31.     Unable to pay his debts, in or about March 2010, Arsenault persuaded an existing

investor in the OGCP Fund ("Investor A") to acquire a membership interest in OGCP LLC and

Old Greenwich Capital Advisors.  Investor A paid Arsenault $500,000 for a 30% interest in

OGCP LLC and Old Greenwich Capital Advisors.

32.     Even with a new minority owner, Arsenault continued to operate the OGCP

Entities single-handedly.  He was solely responsible for handling the OGCP Fund's bank

accounts and investment decisions.

33.     Despite the new infusion of cash in 2010, Arsenault failed to pay his income taxes

to the state of Connecticut in full for 2010.  In June 2012 the state filed another tax lien on his

house in Greenwich.

34.     From 2010 through 2023, the state of Connecticut filed at least three tax liens on

Arsenault's house and Arsenault's mortgagees have filed to foreclose on his house at least three

times (in 2010, 2017, and 2023).

35.     Throughout this period, Arsenault continued to manage the OGCP Fund, even

though its assets under management were relatively limited and he was unable to attract

significant amounts of new investment or numbers of investors.  The OGCP Entities continued to

advertise on the OGCP website, tout Arsenault's experience, and identify him as the Chief

Investment Officer of the OGCP investment management firm.

36.     The fees generated by the OGCP Fund were not enough to cover the personal and

business expenses Arsenault incurred.  Arsenault misappropriated investor money from the

OGCP Fund, and later from the Four Seasons Fund.  He used the stolen money to pay his

family's expenses, for his lifestyle in Greenwich, Connecticut, and for other business

opportunities he pursued.

**C.  Defendants Misappropriated Money from the OGCP Fund and the Four Seasons Fund.**

37.     From at least 2014 through the present, Defendants misappropriated millions of

dollars from the OGCP Fund and Four Seasons Fund by diverting money from the Funds for

Arsenault's ultimate benefit.  During that time, Defendants diverted investors' money to

Arsenault and his family, to pay Arsenault's personal expenses, and to pay Arsenault's

unauthorized business expenses.

38.     The Defendants' scheme worked as follows: over time, Defendants caused the

OGCP Fund to redeem most of the private fund investments in its portfolio for cash.  After a

private fund in the OGCP Fund's portfolio made a distribution or paid a redemption to the OGCP

Fund, Defendants would periodically transfer portions of that cash from the OGCP Fund's bank

accounts to other accounts Arsenault or his family controlled whenever he needed it.  Sometimes

Arsenault made payments or transferred money to himself directly from the OGCP Fund's bank

account, but typically he first transferred the money either to Old Greenwich Capital Advisors'

bank account or the bank account for OGCP LLC and then transferred it to himself or paid his

bills.

39.     At most, Defendants reinvested or repaid to investors only a small fraction of the distributions or redemptions received as part of the OGCP Fund.

40.     Currently, the assets in the OGCP Fund are valued at less than $400,000, even though the portfolio companies have paid the OGCP Fund millions of dollars in redemptions and distributions over the years, and the OGCP Fund has not distributed those millions to investors or reinvested the money.

41.     The use of these funds to pay Arsenault's personal and business expenses was neither justified nor authorized by the OGCP Fund governing documents.  Arsenault and Old Greenwich Capital Advisors were not entitled to these funds because the amount transferred from the OGCP Fund far exceeded the authorized management fee of 1.5% of assets under management, any reimbursable expenses paid by OGCP LLC or Old Greenwich Capital Advisors, or any theoretical performance-based profit share.  For example, during the entire relevant period from October 2014 to the present, Old Greenwich Capital Advisors was entitled, at most, to approximately $250,000 in management fees if calculated monthly based upon the actual assets OGCP then held.  The misappropriation by Arsenault and Old Greenwich Capital Advisors to pay Arsenault's personal expenses was knowing and deliberate.

42.     Stealing money from the OGCP Fund obviously created a hole in its assets.  As part of the scheme, Defendants lied to and misled investors by overstating the value of the OGCP Fund's holdings and their respective capital accounts to conceal their theft.  Defendants often made these misrepresentations in account statements and tax documents.  Defendants knew that the balances on the account statements were false or misleading because they had diverted the money from the Funds to themselves.

43.     On the rare occasion when Arsenault and Old Greenwich Capital Advisors

acknowledged to investors the OGCP Fund's diminished assets they lied to investors about the cause of those decreases, blaming the OGCP Fund's losses on poor investment performance rather than on their misappropriation of the OGCP Fund's assets.  Arsenault and Old Greenwich Capital Advisors hid from investors that they had stolen the investors' money to pay for Arsenault's lifestyle, including his children's college tuitions, his expensive golf club fees, his clothing tab, and his personal credit card bills.

44.     With respect to the Four Seasons Fund, Defendants' scheme was slightly different.  Defendants diverted cash from the OGCP Fund to seed the Four Seasons Fund.  On subsequent OGCP Fund account statements, Defendants represented to investors that the investors held positions in Arsenault's Four Seasons Fund.  Nonetheless, after approximately one year, Arsenault and OGCP Management, which advised the Four Seasons Fund, liquidated the Four Seasons Fund's equity investments and transferred the entire Four Seasons Fund's account to an account Arsenault and Old Greenwich Capital Advisors controlled for their own benefit.

45.     Despite misappropriating the entirety of the Four Seasons Fund, Arsenault and Old Greenwich Capital Advisors continued to falsely report to investors that the Four Seasons Fund contained millions of dollars of their money.

46.     As the principal owner, manager, and person in control of Old Greenwich Capital Advisors and OGCP Management during the relevant period, Arsenault had ultimate authority for the false and misleading statements and omissions made in writing and orally to investors. When Old Greenwich Capital Advisors sent either account statements or tax documents, Arsenault himself emailed those documents to investors.  Arsenault was the primary point of contact for investors for any communications with Old Greenwich Capital Advisors or OGCP Management, and he made most of the communications to investors on behalf of Old Greenwich

11

Capital Advisors and/or OGCP Management.

### a. Examples of Arsenault's and Old Greenwich Capital Advisors' Misappropriation from the OGCP Fund From 2014 to 2016

### i. Fall of 2014

47.     As of 2014, the OGCP Fund held investments in large private funds managed by other investment advisers.

48.     In October 2014, the OGCP Fund received redemptions from two private funds in its portfolio (Portfolio Fund #1 and Portfolio Fund #2) totaling approximately $2.25 million. Arsenault and Old Greenwich Capital Advisors specifically requested the redemption or withdrawal from Portfolio Fund #1.  According to an OGCP Fund September account statement Arsenault emailed to Investor A on or about November 3, 2014, Investor A was entitled to the majority of this $2.25 million.  Indeed, most of these two redemptions appear on Investor A's account statements as a decrease to his investment balance in the portfolio private funds with a corresponding increase to Investor A's cash balance.

49.     Despite the OGCP Fund recording the $2.25 million from the redemptions as being allocated to specific investors, within approximately two months Arsenault transferred from the OGCP Fund's bank account: (1) $50,000 to his Fidelity brokerage account, which he held jointly with his new wife, (2) $3,000 to his ex-wife, (3) $50,000 to OGCP Management, and (4) $550,000 to OGCP LLC.  These transfers were neither authorized nor allowable under the OGCP Fund's governance documents.  Arsenault also transferred approximately $585,000 to other investors in the OGCP Fund other than Investor A, which contradicts the Fund's allocation of the majority of the proceeds of the portfolio funds' redemptions to Investor A.

50.     In his November 3, 2014 email to Investor A attaching the September 2014 account statement, Arsenault informed Investor A that he should "[k]eep in mind your cash

balances have been deployed." Arsenault's email statement is materially misleading. First, Investor A's September account statement showed a starting cash balance of approximately $900,000 and a closing cash balance of $2.2 million. According to the account statement, most of the increase of Investor A's cash balance is derived from a redemption from Portfolio Fund #1, which was recorded in September although the OGCP Fund physically received the cash in October. As of September 1, 2014, the OGCP Fund did not possess $900,000 in cash. Arsenault and Old Greenwich Capital Advisors had misappropriated the OGCP Fund's cash balance to less than $10,000 as of September 1, 2014. Second, by the date of Arsenault's email, Arsenault and Old Greenwich Capital Advisors had not reinvested or "deployed" Investor A's cash balance of $2.2 million into any new investments for Investor A's benefit; instead, they misappropriated large portions of the cash they attributed to Investor A in this account statement. For example, Arsenault spent hundreds of thousands of dollars transferred to OGCP LLC during this time on personal expenses like his credit card bills and mortgage.

51.     To further hide the misappropriation of the OGCP Fund's assets, Arsenault sent Investor A additional false account statements. For example, on or about June 9, 2015, Arsenault emailed Investor A an account statement for January 2015 that falsely represented that the cash from the redemptions allocated to Investor A remained in the OGCP Fund and was held for Investor A's benefit. The January account statement stated that Investor A had a cash balance of about $2.3 million held in the OGCP Fund as of January 1, 2015. In reality, the entire cash balance of the OGCP Fund's bank accounts on January 1, 2015, was only about $765,000.

### ii.     Summer of 2015

52.     On or about July 16, 2015, the OGCP Fund received approximately $560,000 from a redemption of part of its interest in Portfolio Fund #2. Between July and August 2015,

Arsenault and Old Greenwich Capital Advisors caused the OGCP Fund to transfer nearly all the redemption proceeds to accounts held by OGCP LLC and Old Greenwich Capital Advisors.

53.    Like the previous example, most of the proceeds from this redemption were represented to be held in cash for Investor A's capital account.  To conceal Arsenault's and Old Greenwich Capital Advisors' misappropriation of these proceeds, Arsenault sent Investor A account statements that falsely represented that the cash proceeds from the redemption remained in the OGCP Fund and were allocated to Investor A's capital account.

### iii.    Fall of 2016

54.    On or about October 14, 2016, the OGCP Fund received approximately $175,000 from a redemption of part of its interest in Portfolio Fund #2.  By the end of November 2016, Arsenault and Old Greenwich Capital Advisors transferred $175,000 from the OGCP Fund to Old Greenwich Capital Advisors' bank account.  Arsenault and Old Greenwich Capital Advisors transferred this money in three large tranches spread over 45 days.

55.    Arsenault had opened Old Greenwich Capital Advisors' bank account on or about August 28, 2015.  He was the only authorized signatory on the account.  Arsenault did not set up the bank account for Old Greenwich Capital Advisors to be a custodial account for client funds. Instead, Arsenault used the Old Greenwich Capital Advisors' bank account as his personal bank account by routinely using money from this account to pay his personal expenses and the business expenses of Old Greenwich Capital Advisors and his other business ventures.

56.    Previously, Arsenault used a bank account in the name of OGCP LLC in the same manner as he would his personal bank account.

57.    With the money obtained from the partial redemption of the OGCP Fund's interest in Portfolio Fund #2, Arsenault and Old Greenwich Capital Advisors paid, among other

things, (1) approximately $79,000 of the balance on the Arsenault family's personal credit cards; (2) a $25,000 donation to Arsenault's college alma mater; (3) approximately $17,000 to Arsenault's golf club; (4) $2,000 to Arsenault's ex-wife; (5) approximately $20,500 in monthly mortgage payments for Arsenault's house; and (5) approximately $2,800 in rent for the apartment for one of Arsenault's sons.

58.     Most of the $175,000 redemption from Portfolio Fund #2 was allocated to Investor A according to the OGCP Fund's account statements.  To hide Old Greenwich Capital Advisors and Arsenault's misappropriation, Arsenault sent to Investor A account statements that falsely represented that the cash from the redemption from Portfolio Fund #2 was added to Investor A's cash balance.

59.     The misappropriation by Arsenault and Old Greenwich Capital Advisors to pay Arsenault's personal expenses was knowing and deliberate.  For example, for nearly three years, Arsenault habitually paid his personal mortgage directly from a bank account of one of the OGCP Entities using investor money.  From July 2014 through April 15, 2017, Arsenault made approximately 35 mortgage payments from the OGCP LLC's and Old Greenwich Capital Advisors' bank accounts totaling approximately $374,000.  Nothing authorized Arsenault to transfer money from the OGCP Fund to bank accounts for either Old Greenwich Capital Advisors or OGCP LLC to pay monthly his personal mortgage.

**b. Defendants Misappropriated Investor Assets from the Four Seasons Fund.**

60.     In 2014, Arsenault formed a new investment fund, the Four Seasons Fund, which did not attract significant new investors.  After less than a year of managing assets in the Four Seasons Fund, Defendants misappropriated the assets of the Four Seasons Fund, but kept using the Four Seasons Fund nominally as a vehicle to help hide their misappropriation from both the

15

Four Seasons Fund and from the OGCP Fund.

                **i.**     **The Four Seasons Fund**

61.     In August 2014, Arsenault created the Four Seasons Fund by forming three new

entities: (i) OGCP Four Seasons Fund, LP; (ii) OGCP Four Seasons GP, LLC, and (iii) OGCP

Management Co, LLC.

62.     OGCP Four Seasons Fund, LP (the "Four Seasons Fund") functioned as the fund

itself.  OGCP Four Seasons GP, LLC was the general partner for the Four Seasons Fund, and

OGCP Management was the investment manager for the Four Seasons Fund.

63.     Arsenault was the sole managing member of both OGCP Four Seasons GP, LLC

and OGCP Management, and therefore the sole person in control of the Four Seasons Fund.

64.     In a Form ADV filed with the Commission on or about August 28, 2015 as an

exempt reporting advisor, OGCP Management stated that Four Seasons Fund was a hedge fund

and a "fund of funds."

                **ii.**    **Defendants Misrepresented the Assets and Investment Strategy of the Four Seasons Fund.**

65.     The new Four Seasons Fund did not attract any new investors or capital.  Instead,

Defendants used assets from the OGCP Fund to capitalize the Four Seasons Fund.

66.     In January 2015, Old Greenwich Capital Advisors sold approximately $1.3

million in securities issued by a private fund in the OGCP Fund's portfolio (Portfolio Fund #3)

resulting in a cash deposit in the same amount to the OGCP Fund's bank account.  The

redemption proceeds were predominantly allocated to Investor A according to Investor A's

January 2015 OGCP Fund account statement, which Arsenault emailed to Investor A on or about

June 9, 2015.

67.     As the investment manager of the OGCP Fund, Old Greenwich Capital Advisors

was responsible for how money in the OGCP Fund was invested for the ultimate benefit of investors.  After the split with his partner in 2009, Arsenault was the sole manager and control person of Old Greenwich Capital Advisors.

68.     According to Investor A's January 2015 Account Statement, the OGCP Fund invested in the Four Seasons Fund the redemption proceeds allocated to Investor A as well as money from Investor A's putative cash balance of approximately $2.23 million.  As reported on Investor A's January OGCP Fund account statement, as of January 31, 2015, Investor A purportedly had a total of $3,500,000 invested in the Four Seasons Fund.

69.     Defendants, however, had not transferred $3.5 million into the Four Seasons Fund from the OGCP Fund or from any other source in January 2015.  The Four Seasons Fund never possessed assets greater than approximately $1 million.  Every OGCP Fund account statement Arsenault emailed to Investor A on behalf of Old Greenwich Capital Advisors and in conjunction with OGCP Management from January 2015 through at least March 2017 falsely inflated the value of assets held by the Four Seasons Fund.

70.     In addition, the Form ADV filed by OGCP Management in August 2015 also falsely reported the Four Seasons Fund had a gross asset value of approximately $2 million.  As the managing member of OGCP Management, Arsenault signed the Form ADV on behalf of OGCP Management.

71.     At that time, the Four Seasons Fund did not have assets other than the cash and equity holdings in its brokerage account, which totaled approximately $1 million.

72.     That $1 million came from the OGCP Fund.  On or about February 26, 2015, Defendants transferred $1 million from the OGCP Fund to the Four Seasons Fund bank account. Arsenault and OGCP Management eventually transferred the $1 million into a securities

brokerage account opened for the Four Seasons Fund in May 2015.

73.     From at least May 18, 2015 through approximately December 15, 2015, the Four Seasons Fund repeatedly bought and sold publicly traded securities in its brokerage account in a manner resembling day-trading (i.e. multiple short-term investments often not held for more than a day), primarily in consumer-based and retail company stocks with associated hedge positions. Despite this short-term stock trading, the Four Seasons Fund kept the majority of its approximately $1 million in holdings in cash.  This investment strategy deployed by OGCP Management and Arsenault for the Four Seasons Fund contradicted the representations in OGCP Management's Form ADV stating that the Four Seasons Fund was a fund-of-funds.

### iii.     Defendants Diverted Assets from the Four Seasons Fund.

74.     In December 2015, OGCP Management liquidated the Four Seasons Fund's long and short positions and emptied its brokerage account, transferring approximately $1 million to Old Greenwich Capital Advisors' bank account.

75.     To properly make a distribution of the assets held by the Four Seasons Fund, OGCP Management should have transferred the approximately $1 million to the bank account for the OGCP Fund.  Instead, it distributed the money to Old Greenwich Capital Advisors, from which most of the money was spent on Arsenault's personal expenses and other unauthorized business expenses, including transferring $100,000 back to OGCP Management.  OGCP Management breached its fiduciary duty to the Four Seasons Fund by misappropriating the Fund's assets through its diversion to Old Greenwich Capital Advisors.

76.     Arsenault and Old Greenwich Capital Advisors spent the investors' money from the Four Season's Fund predominantly on Arsenault's personal expenses, including paying his ex-wife $48,000; spending $62,000 at a car dealership; paying the college tuition for one of his

sons; paying the rent for his son's apartment; paying for a family insurance trust; paying his own

mortgage; and paying the credit card bills of personal family expenses totaling hundreds of

thousands of dollars.

77.    During 2016, Arsenault charged about $325,000 on his personal credit card,

including $60,000 at one luxury clothing store in Greenwich and thousands of dollars on

vacation travel.

78.    His wife charged about $116,000 to her personal credit card and one of

Arsenault's sons charged about $22,800 to his personal credit card.  At the time, neither had any

affiliation with the OGCP Fund, Old Greenwich Capital Advisors, the Four Seasons Fund, or

OGCP Management.  Nonetheless, Arsenault used the funds in the Old Greenwich Capital

Advisors' bank account, including the investors' money transferred from the Four Seasons Fund,

to pay their credit card bills along with his own.

79.    Defendants knowingly diverted investor funds from the Four Seasons Fund to Old

Greenwich Capital Advisors for their own benefit.  The amount Defendants spent on themselves

was far greater than the management fee authorized to be charged to the OGCP Fund or the Four

Seasons Fund or for any other reimbursable expense or performance fee.  Throughout the

relevant period, the OGCP Entities did not charge nor receive from the OGCP Fund any

performance fee authorized by the fund governing documents.

**D. Defendants Used the Four Seasons Fund to Hide Their Misappropriation from Investors.**

80.    As detailed above, Arsenault and Old Greenwich Capital Advisors had been

misappropriating money from the OGCP Fund since at least 2014, creating a deficit in investors'

capital accounts in the OGCP Fund.

81.    To fill that hole, Arsenault and Old Greenwich Capital Advisors claimed that the

OGCP Fund held valuable positions in the Four Seasons Fund that, in fact, did not exist.  After December 2015, the Four Seasons Fund held virtually no assets because Defendants had misappropriated its assets for their own use.  The Four Seasons Fund's tax returns for 2015 stated that as of December 31, 2015, the Four Seasons Fund possessed a total of $13,502 in assets.  The Four Seasons Fund 2016 tax returns stated that the Fund had zero assets.  The December 31, 2016 balance sheet for OGCP Management prepared by its outside accountants showed that OGCP Management owed approximately $809,000 to Old Greenwich Capital Advisors and $592,000 in credit card debt.  But Arsenault and Old Greenwich Capital Advisors kept falsely claiming on investors' OGCP Fund account statements that the Four Seasons Fund holdings allocated to investors' respective capital accounts were collectively worth millions of dollars.

82.    For example, Arsenault emailed Investor B an OGCP Fund account statement for November 2016.  The November 2016 account statement stated that Investor B's capital account in the OGCP Fund included an approximately $40,000 investment in the Four Seasons Fund.  The Four Seasons Fund did not possess $40,000 of assets in total as of November 2016.  Defendants' false claim that Investor B held this fake investment in the Four Seasons Fund concealed Arsenault's and Old Greenwich Capital Advisors' misappropriation of redemptions in another private portfolio fund held by the OGCP Fund for Investor B's benefit.

83.    Another example: in May 2017, Arsenault sent OGCP Fund account statements for January, February, and March 2017 to Investor A.  All three of these statements falsely represented to Investor A that the OGCP Fund had substantial capital invested in the Four Seasons Fund when in fact the Four Seasons Fund had no assets.  The March statement for Investor A stated that he had approximately $2.9 million invested in the Four Seasons Fund, and

that he had approximately $1.5 million invested in an "OGCP Film Fund."  Neither was true.
The Four Seasons Fund had zero assets as of March 2017.  And, contrary to the representation in
this account statement, there was no "OGCP Film Fund"; instead, the OGCP Fund had only
invested $500,000 in one film production.  The amounts on Investor A's statements were grossly
inflated to conceal amounts that Defendants had misappropriated.

84.    In addition, Old Greenwich Capital Advisors fraudulently calculated its
management fee based upon these non-existent assets.  Old Greenwich Capital Advisors charged
the OGCP Fund to manage the non-existent investment in the Four Seasons Fund and the
inflated investment in films.  Investor A's March 2017 account statement shows Old Greenwich
Capital Advisors assessed a 1.5% management fee on Investor A's purported total capital
account, which was grossly overstated by about $4 million by the inclusion of the non-existent
investment in the Four Seasons Fund and the inflated investment in a film production and
Investor A's cash position.  On Investor B's November 2016 account statement, the management
fee is likewise fraudulently assessed using the non-existent investment in the Four Seasons Fund.

85.    Capital account statements for other investors in the OGCP Fund in 2017 and
2018 similarly included false entries recording investments in the Four Seasons Fund, which
ceased to have any assets by the end of 2016.

86.    A July 2018 OGCP Fund capital account statement for Investor C records a fake
investment in the Four Seasons Fund of $360,000, comprising more than 75% of Investor C's
capital account balance, when in fact the Four Seasons Fund had no assets in July 2018.

**E. Defendants Recorded Their Misappropriation in Their Financial Records as Unpaid Receivables.**

87.    Defendants fraudulently accounted for some of their misappropriation by
recording false receivables and payables among themselves and other entities they controlled in

21

their financial records.  These supposed debts and receivables were never disclosed to investors, directly contradicted the information on investors' account statements, and falsely inflated the capital accounts on investors' tax documents.

88.     The Defendants used various outside accountants to maintain their financial records and file their taxes.  The financial records prepared by these accountants show Arsenault funneling money from the OGCP Fund through Old Greenwich Capital Advisors to Defendants.

89.     An Old Greenwich Capital Advisors balance sheet for 2017 lists its assets and liabilities as of December 31, 2016, and at the end of every month throughout 2017.  As of December 31, 2016, Old Greenwich Capital Advisors supposedly owed the OGCP Fund approximately $3.8 million as "A/P" or accounts payable.  The accounts payable to the OGCP Fund is subdivided into different entries in the balance sheet.  As of December 31, 2016, Old Greenwich Capital Advisors owed the OGCP Fund approximately $2.98 million for the Four Seasons Fund and approximately $820,000 for "Other."  During 2017, Old Greenwich Capital Advisors' debt grew to approximately $4.1 million.

90.     Under the OGCP Fund governing documents, Old Greenwich Capital Advisors is not expressly authorized to unilaterally borrow from the OGCP Fund.

91.     Relatedly, the Old Greenwich Capital Advisors balance sheet listed a purported accounts receivable from Arsenault as of December 31, 2016 of approximately $3.3 4 million.  By the end of 2017, Arsenault's so-called loan from Old Greenwich Capital Advisors had grown to approximately $3.7 million.

92.     The OGCP Fund's 2018 tax returns do not utilize Old Greenwich Capital Advisors as a pass through to account for the money stolen from the OGCP Fund.  According to the 2018 tax returns for the OGCP Fund, as of December 31, 2017, the Four Seasons Fund

directly owed the OGCP Fund approximately $3.5 million; Old Greenwich Capital Advisors owed the OGCP Fund approximately $1.1 million; OGCP Management owed the OGCP Fund approximately $55,000; and a so-called "new fund", whose identity is not otherwise specified, owed the OGCP Fund approximately $350,000.  In total, the OGCP Fund's tax returns record that more than $5 million had been diverted from the OGCP Fund in the form of these putative loans.

93.     These debts from or accounts payable to the OGCP Fund were not permissible under the OGCP Fund governing documents because they are not consistent with the purpose of the OGCP Fund and ethical and fiduciary requirements as required, and neither Arsenault nor Old Greenwich Capital Advisors otherwise received approval from the limited partner investors for such loans or transfers.

94.     Old Greenwich Capital Advisors breached its fiduciary duty to the OGCP Fund by misappropriating assets from the OGCP Fund and facilitating the misappropriation of assets from the OGCP Fund by others.

95.     The OGCP Fund's 2017 balance sheet prepared by outside accountants and sent to Arsenault in February 2018 shows the same debts owed to the OGCP Fund as the OGCP Fund's 2018 tax return, except the balance sheet incorrectly lists the OGCP Fund's purported approximately $3.5 million interest in the Four Seasons Fund as an investment asset instead of an account receivable.  The OGCP Fund had never transferred more than $1 million to the Four Seasons Fund, and, at the time, the Four Seasons Fund held no investment funds or assets at all. The OGCP Fund had neither placed nor held a $3.5 million investment in the Four Seasons Fund.  Instead, this $3.5 million figure represents money that the Defendants misappropriated from the OGCP Fund and the Four Seasons Fund.

96.     The $3.5 million "receivable" from the Four Seasons Fund aligns with the false amounts recorded as investments on the investors' capital account statements to conceal Defendants' misappropriation.  The sum of the investors' capital accounts purportedly invested in the Four Seasons Fund as displayed on the December 2017 account statements also equals approximately $3.5 million, when the Four Seasons Fund in fact had no assets.  What Arsenault and Old Greenwich Capital Advisors in conjunction with OGCP Management falsely represented to investors on their account statements as the value of their share of the OGCP Fund's investment in the Four Seasons Fund was, in reality, Defendants' misappropriation recorded on tax documents as a receivable from the assetless and empty Four Seasons Fund.

97.     During 2019, the OGCP fund wrote off the "receivable" from the Four Seasons Fund in connection with its 2018 tax filing.  As a result, investors' capital accounts plummeted on the face of their tax documents, although these tax documents did not show any substantial losses passing through to the investors from this write-off.

98.     Defendants were supposed to provide the investors in the OGCP Fund, otherwise known as limited partners, with Schedule K-1 tax documents for investors to incorporate into their tax filings.

99.     The Schedule K-1s state, among other information, a partner's capital account balance.  Due in large part to the OGCP Fund's write-off of its receivable from the Four Seasons Fund, Investor A's capital account on his 2018 Schedule K-1 decreased by approximately $2.97 million.

100.    In fact, the value of Investor A's capital account did not decline by approximately $2.97 million in 2018.  Instead, the value of Investor A's capital account declined over time because of Defendants' misappropriation of the OGCP Fund's assets that were attributable to

24

Investor A's account, which Defendants fraudulently concealed with the fake receivable from the Four Seasons Fund and other entities controlled by Defendants.  As a result, the Schedule K-1 documents Investor A received for years *prior to* 2018 also falsely overstated the amount of Investor A's capital account in the OGCP Fund.

101.    Even with the write-off of the "receivable" from the Four Seasons Fund, the investors' 2018 Schedule K-1s for the OGCP Fund still overstated the investors' true capital account balances because the OGCP Fund carried similar "receivables" representing Defendants' misappropriation beyond 2018.  As of December 31, 2018, the OGCP Fund still listed a $1.1 million receivable from Old Greenwich Capital Advisors, a $413,000 receivable from a supposed "new fund," and a $56,000 receivable from OGCP Management, all of which were not true receivables, but were empty accounting placeholders Defendants used to conceal their misappropriation of assets from the OGCP Fund.

102.    In connection with the OGCP Fund's 2019 tax filings, the receivable from OGCP Management and the "new fund" were written off.  In addition, all but approximately $380,000 of the receivable from Old Greenwich Capital Advisors was written off, amounting to a total write-off of approximately $1.18 million.  Thus, in connection with the 2018 and 2019 tax returns for the OGCP Fund, the OGCP Fund's capital accounts reflected on its tax documents decreased by approximately $4.68 million due to writing off the fake receivables Defendants had used to conceal their misappropriation of the OGCP Fund's assets.

103.    According to its tax returns, as of the end of December 2019, the OGCP Fund's total assets consisted of only $1,883 in cash; $358,970 in portfolio investments; and a $392,269 receivable from Old Greenwich Capital Advisors.

104.    From 2018 onwards, Arsenault and Old Greenwich Capital Advisors avoided

providing to investors accurate Schedule K-1s and account documentation, which may have revealed their misappropriation of the OGCP Fund's assets.  Old Greenwich Capital Advisors and Arsenault stopped providing account statements and tax documents to some investors altogether and provided other investors with only limited documentation, and then only after those investors made repeated demands for documents.

105.    Initially, Arsenault provided Investor A with a Schedule K-1 for 2018 that did not contain any closing account balance, which otherwise would have revealed that Defendants wrote down Investor A's capital account by approximately $2.97 million that year. When Investor A finally received a draft version of his 2018 Schedule K-1 for the OGCP Fund that showed the approximately $2.97 million decrease in his capital account, he questioned Arsenault about it.  Ultimately, in response, Arsenault fraudulently told Investor A that the drop in his capital account was because of a poor investment, when in fact it was because Defendants had been stealing from the OGCP Fund.

**F. Examples of Arsenault's and Old Greenwich Capital Advisors' Misappropriation from the OGCP Fund After 2016.**

106.    The OGCP Fund's dwindling assets did not stop Arsenault and Old Greenwich Capital Advisors from stealing the Fund's remaining assets.

**a.  Summer of 2017**

107.    On or about July 5, 2017, the OGCP Fund received a $250,000 distribution from another private fund in its portfolio, Portfolio Fund #4.  Prior to receiving the distribution, the OGCP Fund's bank account was overdrawn by $28.78.

108.    The same day, Arsenault, acting through Old Greenwich Capital Advisors, transferred $150,000 to Old Greenwich Capital Advisors and $25,000 to OGCP Management. Prior to these transfers, there was virtually no money in the Old Greenwich Capital Advisors'

bank account.

109.    Also on July 5, Arsenault transferred $40,000 from the Old Greenwich Capital Advisors' bank account to his wife's brokerage account; paid his ex-wife $3,700; and paid his golf club about $19,500. The next day he paid approximately $67,000 in personal credit card bills with money from the Old Greenwich Capital Advisors' account.

110.    Within one month, Arsenault and Old Greenwich Capital Advisors had drained the entire $250,000 distribution from Portfolio Fund #4 from the OGCP Fund account and had spent more than $180,000 on personal expenses (e.g. credit card bills, children's rent, utility bills, and golf club fees), unrelated or non-reimbursable business costs, and transfers to family members.

111.    The Defendants' use and receipt of the money was not authorized and grossly exceeded any legitimate use or management fees chargeable to the OGCP Fund.

**b.  Spring of 2019**

112.    Arsenault also misappropriated later redemptions from Portfolio Fund #1 paid in April and May 2019, which totaled approximately $278,000.

113.    As of April 1, 2019, the OGCP Fund bank account balance equaled $0.66.  On April 12, 2019, the OGCP Fund received a redemption of approximately $264,000 from Portfolio Fund #1.  Hours later, Arsenault, acting on behalf of Old Greenwich Capital Advisors, transferred about half of the money ($125,000) to the Old Greenwich Capital Advisors' bank account.  At the time, the Old Greenwich Capital Advisors' bank account was also virtually empty.

114.    Immediately, Arsenault, acting on behalf of Old Greenwich Capital Advisors, used the proceeds from Portfolio Fund #1 to transfer $100,000 to his wife's brokerage account,

which was later spent on his family's expenses.  The same day, April 12, Arsenault paid a

landscaper approximately $9,500.

115.    By the end of May, Arsenault transferred $239,000 from the OGCP Fund to Old

Greenwich Capital Advisors, and by June 14, 2019, he had spent all but $851 on unrelated

business expenses; transfers to his family's brokerage accounts totaling $125,000; and personal

expenses, including $25,000 at a luxury clothing store, approximately $20,000 in golf club fees,

and approximately $4,000 for interior design specialists.

### c.    Spring of 2021

116.    As portfolio investments held by the OGCP Fund dwindled from Defendants'

misappropriation, redemptions and distributions to the OGCP Fund became smaller.  On or about

May 13, 2021, a private fund, Portfolio Fund #5, held by the OGCP Fund for the sole benefit of

Investor B, distributed approximately $39,000 to the OGCP Fund.  Prior to this distribution, the

OGCP Fund's bank account balance was $4.67.  Between May 13 and May 27, 2021, Arsenault,

acting on behalf of Old Greenwich Capital Advisors, made five unauthorized transfers to Old

Greenwich Capital Advisors' bank account totaling $39,000, effectively emptying the account.

117.    Before receiving the proceeds from the OGCP Fund, the Old Greenwich Capital

Advisors' bank account was overdrawn.  By the end of May 2021, Arsenault, on behalf of Old

Greenwich Capital Advisors, used the money they stole from the OGCP Fund, among other

things, to transfer $18,000 to his wife's brokerage account; pay approximately $6,500 for interior

design work unrelated to the OGCP Fund; pay approximately $2,500 for Arsenault's personal

insurance; pay business expenses unrelated to the Fund; and withdraw $5,000 in cash, thereby

effectively emptying the Old Greenwich Capital Advisors' account.  All these funds were

required to be held for the benefit of Investor B, rather than used for Arsenault's and Old

Greenwich Capital Advisors' personal and business expenses.

118.     From May 2021 through 2023, Arsenault and Old Greenwich Capital Advisors misappropriated approximately $74,000 by similarly stealing the distributions from Investor B's investment in Portfolio Fund #5.

119.     From October 2014 through the present, Defendants misappropriated at least $4.1 million from the OGCP Fund and the Seasons Fund.  Defendants' misappropriation resulted from their long-standing and intentional scheme to steal the redemptions and distributions paid into the Funds by the private portfolio funds and to hide their theft by lying to investors about the Funds' assets.

## **FIRST CLAIM**

### **Fraud in Connection with the Purchase or Sale of Securities in Violation of Section 10(b) of the Exchange Act and Rules 10b-5(a) and 10b-5(c) Thereunder**

#### **(All Defendants)**

120.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 119 above, as if set forth fully herein.

121.     By engaging in the conduct above, Defendants, directly or indirectly, by the use of means or instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, knowingly or recklessly: (a) have used or employed or are using or employing devices, schemes, or artifices to defraud; and (c) have engaged or are engaging in acts, practices, or courses of business which operate as a fraud or deceit upon any persons, including purchasers or sellers of the securities.

122.     The conduct of the Defendants involved fraud, deceit, manipulation, and/or deliberate or reckless disregard of regulatory requirements and directly or indirectly resulted in substantial losses to other persons.

123.     As a result, Defendants Jeffrey Arsenault; Old Greenwich Capital Advisors, LLC; and OGCP Management Co, LLC have violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78(b)] and Rules 10b-5(a) and 10b-5(c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].

## SECOND CLAIM

### Prohibited Transactions by Investment Advisers in
### Violations of Sections 206(1) and 206(2) of the Advisers Act

### (All Defendants)

124.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 123 above, as if set forth fully herein.

125.     At all relevant times, the Defendants were each an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. §80b-2(a)(11)].

126.     By engaging in the conduct described above, Defendants, while acting as an investment adviser, by use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly: (i) employed devices, schemes, or artifices to defraud clients and prospective clients; and (ii) engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon clients and prospective clients.

127.     By reason of the above conduct, Defendants, directly or indirectly, singly or in concert, violated, and unless enjoined, will continue to violate Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§ 80b-6(1) and 80b-6(2)].

## THIRD CLAIM

### Prohibited Transactions by Investment Advisers in
### Violations of Section 206(4) of the Advisers Act and Rule 206(4)-8

### (All Defendants)

128.    The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 127 above, as if set forth fully herein.

129.    At all relevant times, the Defendants were each an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. §80b-2(a)(11)].

130.    At all relevant times, the OGCP Fund and the Four Seasons Fund were "pooled investment vehicles" within the meaning of Advisers Act Rule 206(4)-8(b) [17 C.F.R. § 275.206(4)-8(b)].

131.    By engaging in the conduct described above, Defendants, while acting as an investment adviser, by use of the means and instrumentalities of interstate commerce and of the mails, directly or indirectly, engaged in acts, practices, or courses of business which are fraudulent, deceptive or manipulative.

132.    By reason of the above conduct, Defendants, directly or indirectly, singly or in concert, violated, and unless enjoined, will continue to violate Section 206(4) of the Advisers Act [15 U.S.C. § 80b-6(4)] and Rule 206(4)-8 thereunder [15 C.F.R. § 275.206(4)-8].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a Final Judgment:

A.    Permanently restraining and enjoining Defendants, their officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them who

31

receive actual notice of the injunction by personal service or otherwise, and each of them, from

violating Section 10(b) of the Exchange Act [15 U.S.C. 78j(b)] and Rules 10b-5(a) and 10b-5(c)

thereunder [17 C.F.R. 240.10b-5(a) and (c)], by using any means or instrumentality of interstate

commerce, or of the mails, or of any facility of any national securities exchange, in connection

with the purchase or sale of any security:

     a.  to employ any device, scheme, or artifice to defraud; or

     b.  to engage in any act, practice, or course of business which operates or would
operate as a fraud or deceit upon any person

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any person, or (ii)

disseminating false or misleading documents, materials, or information or making, either orally

or in writing, any false or misleading statement in any communication with any investor or

prospective investor, about (a) any investment strategy or investment in securities, (b) the use of

investor funds, (c) compensation to any person, or (d) the misappropriation of investor funds or

investment proceeds;

     B.    Permanently restraining and enjoining Defendants, their officers, agents, servants,

employees and attorneys, and those persons in active concert or participation with them who

receive actual notice of the injunction by personal service or otherwise, and each of them, from

violating Sections 206(1), 206(2), and 206(4) of the Advisers Act [15 U.S.C. §§ 80b-6(1), 80b-

6(2), and 80b-6(4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8] by using the mails

or any means or instrumentality of interstate commerce, directly or indirectly:

     a.  to employ any device, scheme, or artifice to defraud any client or prospective
client; or

     b.  to engage in any transaction, practice, or course of business which operates as a

fraud or deceit upon any client or prospective client; or

c. to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative;

d. to make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle

by, directly or indirectly, (i) creating a false appearance or otherwise deceiving any investor, client, prospective investor, or prospective client, or (ii) disseminating false or misleading documents, materials, or information or making, either orally or in writing, any false or misleading statement in any communication with any investor, client, prospective investor, or prospective client, about (a) any investment strategy or investment in securities, (b) the use of investor funds, (c) compensation to any person, or (d) the misappropriation of investor funds or investment proceeds;

C.    Permanently restraining and enjoining Jeffrey Arsenault from directly or indirectly acting as or being associated with any broker, dealer, or investment adviser, except that such injunction would not prevent him from being a customer or client of a broker, dealer, or investment adviser.  For the purposes of this paragraph:

a. a person is associated with a broker or dealer if such person is a partner, officer, director, or branch manager of such broker or dealer (or occupies a similar status or performs similar functions), directly or indirectly controls, is controlled by, or is under common control with such broker or dealer, or is an employee of such broker or dealer;

     b.  a person is associated with an investment adviser if such person is a partner, officer, or director of such investment adviser (or performs similar functions), or directly or indirectly controls or is controlled by such investment adviser, including any employee of such investment adviser;

     D.    Ordering Defendants pay disgorgement plus prejudgment interest of all unjust enrichment obtained by reason of the unlawful conduct alleged in this Complaint, pursuant to Exchange Act Sections 21(d)(3), (5), and (7) [15 U.S.C. §§ 78u(d)(3), (5), (7)];

     E.    Ordering the Defendants to each pay civil monetary penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and Section 209(e) of the Advisers Act [15 U.S.C. § 80b-9(e)];

     F.    Prohibiting Defendant Jeffrey Arsenault unconditionally and permanently from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)]; and

     G.    Granting such other and further relief as this Court may deem just and proper.

[Remainder of page intentionally left blank]

## <u>JURY DEMAND</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury trial in this matter.

DATED: October 11, 2024

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

/s/ Peter Bryan Moores
Peter Bryan Moores (Mass. Bar No. 658033)
David Fox (D.C. Bar No. 1686020)
Marc J. Jones (Mass. Bar No. 645910)
Martin F. Healey (Mass. Bar No. 227550)
Boston Regional Office
33 Arch Street, 24th Floor
Boston, Massachusetts 02110
(617) 573-8900 (Main)
(617) 573-4590 (Facsimile)
(617) 573-4576 (Moores)
mooresp@sec.gov (Moores)